CLERK
U.S. DISTRICT COURT
DISTRICT OF NEW JERSEY
RECEIVED

2026 JUN -3 A 9:22

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

**WILLIAMS VICTOR FUNES NÚÑEZ,**
Plaintiff,

v.

**MORGAN PROPERTIES, LLC;**
**CRANBURY CROSSING APARTMENTS;**
**BARBARA J. TIERNEY, individually and as an agent of Morgan Properties;**
**CAROLYN CANNELLA, individually and as an agent of Morgan Properties; and**
**ROSEMARY SPOHN, individually and as an agent of Morgan Properties,**

Defendants.

Civil Action No. 3:25-cv-17084-RK-JBD

# FIRST AMENDED COMPLAINT

FOR VIOLATIONS OF THE FAIR HOUSING ACT
AND THE NEW JERSEY LAW AGAINST DISCRIMINATION

JURY TRIAL DEMANDED

**WILLIAMS VICTOR FUNES NÚÑEZ**
Plaintiff Pro Se
311 Cranbury Circle
East Brunswick, NJ 08816
williamsfunes@hotmail.com

# I. INTRODUCTION

**1.** This action arises from acts and conduct involving disability-based housing discrimination, denial of and interference with reasonable accommodations, impairment of the equal use and enjoyment of housing, and retaliation related to the exercise of rights protected under the Fair Housing Act ("FHA"), 42 U.S.C. § 3601 et seq., and the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5-1 et seq.

**2.** This action does not seek to relitigate an ordinary landlord-tenant dispute, nor does it seek to duplicate claims pending in any state landlord-tenant proceeding. Rather, this action is based upon independent civil injuries arising from the denial, delay, interference with, and unequal treatment of disability-related reasonable accommodations, as well as retaliatory and coercive conduct occurring after Plaintiff exercised rights protected by federal and state fair housing laws.

**3.** In or about September 2021, Plaintiff and his family relocated from San Francisco, California, to Cranbury Crossing Apartments in East Brunswick, New Jersey, seeking residential stability, educational opportunities, and a suitable housing environment for a member of the household identified herein as "LGFE," whose disability-related needs are protected under federal and state law.

**4.** From the initial rental application and leasing process in 2021, representatives of Morgan Properties possessed actual knowledge of disability-related circumstances affecting Plaintiff's household, including communications and requests concerning a support and/or assistance animal associated with those protected needs.

**5.** From that point forward, Plaintiff and his household resided in a dwelling managed by Defendants under circumstances in which Defendants were aware of disability-related housing needs and were therefore obligated to respond in a reasonable, consistent, and non-discriminatory manner.

**6.** Plaintiff alleges that following administrative changes associated with the management of Barbara J. Tierney, previously recognized accommodations became the subject of inconsistent responses, increased administrative friction, unequal treatment, and conduct interfering with accommodations that had been previously understood, recognized, or approved during the initial leasing process.

**7.** Plaintiff further alleges that, despite possessing knowledge of disability-related needs within the household, Defendants engaged in acts and omissions that interfered with the equal enjoyment of housing, increased residential instability, and imposed emotional, administrative, and financial burdens upon Plaintiff as a consequence of exercising protected rights.

**8.** The conduct alleged herein did not consist merely of routine maintenance disagreements or ordinary enforcement of internal policies. Rather, it constituted a pattern of unequal administrative treatment, obstruction of accommodations, and hostile or punitive responses to requests protected under the FHA and NJLAD.

**9.** Plaintiff further alleges that events occurring after the administrative transition reflected a continuing pattern of interference with an otherwise established housing relationship, including shifting positions, new requirements, and inconsistent treatment of the household's disability-related needs.

**10.** Plaintiff alleges that the acts described in this Complaint constitute injuries separate and distinct from any pending state-court proceeding because this action seeks redress for violations of federal and state fair housing rights, rather than disputes concerning possession of the premises, rental balances, or the tenancy itself.

**11.** This action is not intended to relitigate a traditional landlord-tenant controversy or to challenge the ordinary administration of rental accounts. Instead, it specifically concerns disability discrimination, denial of and interference with reasonable accommodations, retaliation, and impairment of the equal use and enjoyment of housing in violation of federal and state law.

# II. JURISDICTION AND VENUE

**12.** This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under the Fair Housing Act ("FHA"), 42 U.S.C. § 3601 et seq., a law of the United States.

**13.** This Court has supplemental jurisdiction over Plaintiff's related state-law claims pursuant to 28 U.S.C. § 1367 because those claims arise from the same common nucleus of operative facts as Plaintiff's federal claims.

**14.** Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial portion of the events and omissions giving rise to the claims alleged herein occurred in Middlesex County, New Jersey, including at Cranbury Crossing Apartments in East Brunswick, New Jersey.

# III. PARTIES

## A. Plaintiff

**15.** Plaintiff, Williams Victor Funes Núñez ("Plaintiff"), is an adult resident of the State of New Jersey and, at all times relevant to this action, resided with his family at Cranbury Crossing Apartments in East Brunswick, New Jersey.

**16.** Plaintiff's household included a minor identified herein as "LGFE." Defendants were aware of disability-related circumstances affecting Plaintiff's household and received multiple communications, accommodation requests, and supporting documentation relating to those circumstances.

**17.** Plaintiff brings this action solely on his own behalf and seeks recovery only for injuries personally sustained by Plaintiff. References to LGFE in this Complaint are included solely to describe disability-related circumstances known to Defendants and the factual basis for the accommodation requests at issue. Plaintiff does not assert claims on behalf of LGFE and does not seek recovery for injuries allegedly sustained by LGFE.

**18.** Plaintiff alleges that Defendants' conduct interfered with his use and enjoyment of housing, caused emotional distress, imposed administrative and financial burdens, and resulted in other injuries compensable under federal and state law.

## B. Defendants

**19.** Defendant Morgan Properties, LLC ("Morgan Properties") is a business entity engaged in the ownership, operation, management, leasing, and administration of residential housing communities, including Cranbury Crossing Apartments in East Brunswick, New Jersey.

**20.** Defendant Cranbury Crossing Apartments ("Cranbury Crossing") is a residential housing community located in East Brunswick, New Jersey and, upon information and belief, was owned, operated, managed, controlled, and/or administered by Morgan Properties during the period relevant to this action.

**21.** Defendant Barbara J. Tierney ("Tierney") served as Property Manager for Cranbury Crossing Apartments and participated directly in communications, administrative decisions, accommodation-related matters, and actions affecting Plaintiff's tenancy and housing conditions.

**22.** Defendant Carolyn Cannella ("Cannella") served as Regional Property Manager associated with Morgan Properties and participated in communications, reviews, decisions, and responses concerning Plaintiff's complaints, accommodation requests, and disability-related housing concerns.

**23.** Defendant Rosemary Spohn ("Spohn") served as Deputy General Counsel – Operations for Morgan Properties and participated in legal and administrative communications concerning Plaintiff's accommodation requests, housing-related concerns, and other matters described in this Complaint.

# IV. FACTUAL ALLEGATIONS

## *A. Initial Accommodations and Disability-Related Housing Context*

**24.** On or about July 23, 2021, Plaintiff initiated communications concerning the residential application process for Cranbury Crossing Apartments.

**25.** On July 29, 2021, leasing representatives Tracy Barbiero and Samantha Morgan, acting on behalf of Morgan Properties, received communications and documentation concerning disability-related circumstances within Plaintiff's household, including requests relating to a support and/or assistance animal.

**26.** On that same date, the leasing office provided forms relating to reasonable accommodation requests and confirmed that no pet fee would be assessed in connection with the assistance animal associated with Plaintiff's household.

**27.** On September 3, 2021, Plaintiff and his family relocated from San Francisco, California, to Cranbury Crossing Apartments in East Brunswick, New Jersey.

**28.** During the initial period of residency, Plaintiff's household maintained an otherwise stable housing relationship and did not experience the level of administrative friction that later arose under subsequent management.

## *B. Administrative Changes and Accommodation-Related Conflicts*

**29.** In or about October 2022, Barbara J. Tierney arrived at Cranbury Crossing Apartments and assumed administrative and managerial responsibilities associated with the property.

**30.** Following that administrative transition, Plaintiff began experiencing inconsistent responses, increased administrative friction, and a more restrictive approach toward matters that had previously been treated as accommodations or protected disability-related circumstances.

**31.** On September 14, 2023, Barbara J. Tierney sent a written communication asserting that the assistance animal residing in Plaintiff's household was not reflected in the lease or pet addendum and requested the imposition of pet fees and monthly pet rent.

**32.** On or about September 29, 2023, Dr. Michael Lucas, a physician affiliated with Saint Peter's University Hospital, issued medical documentation relating to Leonardo Funes Espejo. The documentation stated that the child exhibited global developmental delays and characteristics associated with neurodevelopmental disorders and recommended that he be permitted to maintain a support animal within the family residence.

**33.** On October 1, 2023, Barbara J. Tierney forwarded Plaintiff's reasonable accommodation request to the appropriate corporate department of Morgan Properties for review and processing.

**34.** In that communication, Barbara J. Tierney expressly identified that the request concerned Plaintiff's minor child and represented that the child's disability was readily observable. She further transmitted the supporting medical documentation for corporate review.

**35.** *Barbara J. Tierney stated in substance: "The resident living at 311 Cranbury Circle is submitting a request for ESA for his son. It is an obvious disability."*

**36.** Thereafter, Morgan Properties reviewed the accommodation request through its internal reasonable accommodation procedures and disability-related verification process.

**37.** On October 3, 2023, Morgan Properties formally approved the reasonable accommodation request and authorized the assistance animal to remain in the residential unit as an accommodation related to the disability-related circumstances previously presented to the company.

**38.** The approval letter expressly acknowledged that the accommodation request had been reviewed and approved through Morgan Properties' accommodation process.

**39.** As a result of the approval and accompanying documentation, Morgan Properties acquired actual and documented knowledge of the disability-related circumstances underlying the accommodation request.

**40.** Plaintiff alleges that Barbara J. Tierney's initial communications regarding pet fees and pet rent ignored, contradicted, or undermined accommodations and understandings that had previously existed during the original leasing process.

**41.** Plaintiff further alleges that, following Barbara J. Tierney's arrival at Cranbury Crossing Apartments, disability-related matters affecting Plaintiff's household were subjected to greater scrutiny, inconsistency, and administrative burden despite Defendants' knowledge of the circumstances underlying the accommodation request.

## C. Housing Conditions Affecting a Household with Known Disability-Related Needs

**42.** Between approximately May 28, 2024 and July 17, 2024, the air-conditioning system serving Plaintiff's residential unit experienced a significant malfunction and remained inoperable or substantially impaired for an extended period.

**43.** During that period, Plaintiff submitted multiple maintenance requests, written communications, and complaints concerning the condition of the residential unit and the lack of adequate climate control.

**44.** Plaintiff submitted maintenance requests relating to the air-conditioning system on or about June 4, 2024, June 19, 2024, and June 27, 2024.

**45.** Through those communications, Plaintiff repeatedly informed Cranbury Crossing Apartments and Barbara J. Tierney that the environmental conditions within the unit were adversely affecting Plaintiff's household.

**46.** Plaintiff further advised that the household included disability-related circumstances previously known to Defendants through prior accommodation requests and supporting documentation.

**47.** On or about June 28, 2024, Plaintiff sent a written communication to Barbara J. Tierney explaining that the household had been without adequate air-conditioning for an extended period and that the excessive indoor temperatures were creating substantial difficulties within the home.

**48.** In that communication, Plaintiff specifically advised that the existing conditions were negatively affecting the stability, comfort, and daily functioning of the household.

**49.** Plaintiff further advised that portable fans and temporary measures were insufficient to address the ongoing lack of adequate climate control within the dwelling.

**50.** Plaintiff requested prompt intervention and corrective action concerning the conditions affecting the residential unit.

**51.** On or about July 8, 2024, after repeated requests for repair and multiple communications concerning the ongoing conditions, Plaintiff sought assistance and guidance from public agencies concerning the prolonged lack of air-conditioning.

**52.** During those communications, Plaintiff expressed concerns regarding the continued habitability and safety of the unit under the existing conditions.

**53.** On July 9, 2024, Plaintiff and Monica Espejo personally visited the management office of Cranbury Crossing Apartments and discussed the unresolved air-conditioning issues with Barbara J. Tierney and maintenance supervisor David Williams.

**54.** During that meeting, Plaintiff again advised Barbara J. Tierney that the conditions within the unit were adversely affecting the household and that the matter required immediate attention.

**55.** Plaintiff alleges that, by that time, Barbara J. Tierney and Cranbury Crossing Apartments had received repeated notice of the conditions described above as well as the disability-related circumstances previously disclosed by Plaintiff.

**56.** On or about July 17, 2024, Plaintiff again contacted the management office seeking information concerning the status of the requested repairs and the continued lack of adequate climate control within the dwelling.

## D. Increased Administrative Scrutiny and Escalation Following Disability-Related Communications

**57.** During approximately the third week of August 2024, Plaintiff observed Barbara J. Tierney using a cellular telephone to record Plaintiff while he was walking the assistance animal associated with Plaintiff's household.

**58.** Plaintiff alleges that this incident occurred after Defendants had already received multiple disability-related communications, accommodation requests, and notices concerning conditions affecting Plaintiff's household.

**59.** Plaintiff further alleges that the incident occurred within a broader context of increasing administrative scrutiny directed toward his household following repeated disability-related communications and housing-related complaints.

**60.** On September 9, 2024, residents of Cranbury Crossing Apartments submitted communications to regional management concerning maintenance concerns, sanitation issues, administrative conflicts, and complaints relating to the management practices of Barbara J. Tierney.

**61.** Plaintiff alleges that such communications reflected broader concerns regarding conditions and management practices affecting residents within the complex.

### *E. Administrative Escalation During 2025*

**62.** On March 12, 2025, Barbara J. Tierney, acting on behalf of Cranbury Crossing Apartments, issued a written communication to Plaintiff concerning alleged lease violations, occupancy concerns, and other matters relating to Plaintiff's tenancy.

**63.** According to that communication, management expressed concerns regarding noise, alleged unauthorized occupants, and items located on the balcony of Plaintiff's residential unit.

**64.** Plaintiff alleges that those communications occurred after Defendants had already received years of communications concerning disability-related circumstances affecting Plaintiff's household.

**65.** In or about April 2025, Cranbury Crossing Apartments issued a Notice to Enter concerning an inspection and photographic documentation of Plaintiff's residential unit.

**66.** Plaintiff alleges that the inspection occurred within a context of increasing administrative scrutiny directed toward Plaintiff's household.

**67.** On May 7, 2025, Cranbury Crossing Apartments issued a communication entitled "Demand for Payment of Rent" directed to Plaintiff's household.

**68.** Plaintiff alleges that the communication referenced a minor residing within the household despite the fact that the minor was not a party to the lease agreement and was not responsible for any financial obligations arising from the tenancy.

### *F. May 8, 2025 Incident and Related Communications*

**69.** On or about May 8, 2025, Monica Espejo, Plaintiff's wife, visited the management office of Cranbury Crossing Apartments for the purpose of speaking with maintenance supervisor David Williams regarding maintenance-related matters and conditions affecting the family's residential unit.

**70.** Plaintiff alleges that, while Monica Espejo was present at the management office for that purpose, Barbara J. Tierney approached her and engaged in a confrontational interaction.

**71.** Plaintiff further alleges that the interaction occurred in the presence of two minor children residing within Plaintiff's household.

**72.** During the exchange, Barbara J. Tierney displayed facial expressions, gestures, and body language that Plaintiff perceived as dismissive, hostile, and contemptuous toward concerns being

raised by Plaintiff's family.

**73.** Plaintiff alleges that the conduct described above contributed to an atmosphere of tension and hostility affecting Plaintiff's household and Plaintiff's interactions with property management.

**74.** According to Plaintiff, Barbara J. Tierney referenced complaints allegedly received from neighbors concerning noise and activities within Plaintiff's household.

**75.** Plaintiff further alleges that Barbara J. Tierney referred to prior letters, communications, complaints, and concerns previously submitted by Plaintiff regarding housing conditions and administrative issues.

**76.** According to Plaintiff, Barbara J. Tierney stated that the household should resolve outstanding balances or leave the residential community.

**77.** Plaintiff further alleges that Barbara J. Tierney characterized Plaintiff's household as 'problematic' and suggested that the family should relocate from the residential complex.

**78.** Plaintiff additionally alleges that Barbara J. Tierney made comments concerning the autistic child residing within the household in a dismissive and derogatory manner.

**79.** Plaintiff alleges that these events occurred after repeated disability-related communications, accommodation requests, and housing-related concerns known to Defendants.

## G. Regional Management Communications and Escalation to Legal Oversight

**80.** On or about May 12, 2025, Plaintiff commenced a Small Claims action relating to administrative conduct and housing-related disputes involving Barbara J. Tierney and circumstances affecting Plaintiff's tenancy.

**81.** Plaintiff alleges that, following that filing and other disability-related communications, regional and corporate personnel became increasingly involved in matters concerning Plaintiff's household.

**82.** During May 2025, Plaintiff communicated with Carolyn Cannella concerning housing conditions, administrative concerns, and circumstances affecting Plaintiff's household.

**83.** Plaintiff provided information concerning disability-related circumstances previously disclosed to Defendants and requested assistance regarding ongoing housing-related issues.

**84.** Plaintiff further advised Cannella that members of the household experienced communication-related barriers and requested reasonable consideration of those circumstances during future communications.

**85.** Plaintiff alleges that Cannella thereby acquired direct knowledge of Plaintiff's concerns, accommodation-related issues, and disability-related circumstances affecting the household.

**86.** Plaintiff sought a meeting with regional management to discuss ongoing concerns affecting the tenancy and housing conditions.

**87.** Plaintiff alleges that a meeting involving regional management was contemplated but was not ultimately conducted.

### *H. Rosemary Spohn's Involvement and Transition to Legal Oversight*

**88.** On or about May 29, 2025, Rosemary Spohn, Deputy General Counsel – Operations for Morgan Properties, became involved in matters relating to Plaintiff's household and ongoing communications with management.

**89.** Plaintiff alleges that Spohn's involvement marked a transition from ordinary property-management communications to communications subject to legal oversight and review.

**90.** Plaintiff further alleges that a previously contemplated meeting involving regional management did not occur following Spohn's involvement.

**91.** Thereafter, communications concerning Plaintiff's housing-related concerns increasingly occurred through channels controlled or monitored by legal personnel associated with Morgan Properties.

**92.** Plaintiff alleges that Spohn participated in decisions concerning how accommodation requests, complaints, and related communications would be handled going forward.

**93.** Plaintiff further alleges that the involvement of legal personnel occurred after Defendants had already received extensive information concerning disability-related circumstances affecting Plaintiff's household.

**94.** By that time, Defendants had received years of communications, documentation, accommodation requests, and notices relating to Plaintiff's household and housing concerns.

### *I. Request for First-Floor Accommodation*

**95.** On or about September 16, 2025, Plaintiff submitted a request seeking a reasonable accommodation in the form of a transfer to a first-floor residential unit within Cranbury Crossing Apartments.

**96.** Plaintiff sought the accommodation because of disability-related circumstances affecting the household and because he believed that a first-floor unit was necessary to address those circumstances.

**97.** On September 17, 2025, Rosemary Spohn responded to Plaintiff and initiated communications concerning the accommodation request and the documentation required for review.

**98.** On September 18, 2025, Plaintiff submitted medical documentation issued by Dr. Keerthana Krosuri, M.D., of Saint Peter's University Hospital in support of the requested accommodation.

**99.** The medical documentation recommended a transfer to a first-floor unit and described circumstances supporting the requested accommodation.

**100.** Plaintiff alleges that Rosemary Spohn, Carolyn Cannella, and Morgan Properties received the supporting medical documentation and acquired direct knowledge of the accommodation request.

**101.** On September 23, 2025, Morgan Properties formally approved Plaintiff's request for a reasonable accommodation involving transfer to a first-floor unit.

**102.** The approval acknowledged the accommodation request and authorized a transfer consistent with the information presented during the accommodation process.

**103.** Plaintiff alleges that the approval confirmed Defendants' knowledge of the disability-related circumstances underlying the accommodation request.

**104.** On or about September 30, 2025, another resident of Cranbury Crossing Apartments was permitted to transfer to a first-floor unit within the same residential community.

**105.** Plaintiff alleges that the transfer demonstrates that mechanisms existed within the community for internal residential transfers when management elected to authorize them.

**106.** On or about November 21, 2025, Carolyn Cannella informed Plaintiff by electronic mail that first-floor units were available within Cranbury Crossing Apartments.

**107.** According to Cannella's communication, Plaintiff would be required to satisfy certain financial conditions, including bringing the rental account current, before the approved transfer could be completed.

**108.** Plaintiff alleges that, despite the prior approval of the accommodation request, the transfer was not implemented and remained subject to additional conditions communicated after the accommodation had already been approved.

**109.** Plaintiff further alleges that first-floor units were available during the relevant period and that Defendants nevertheless failed to effectuate the approved accommodation.

## J. Events Following Approval of the Accommodation Request

**110.** On October 28, 2025, Cranbury Crossing Apartments initiated a landlord-tenant action against Plaintiff alleging nonpayment of rent.

**111.** Plaintiff alleges that, at the time of that filing, Defendants were aware of the accommodation request approved on September 23, 2025 and the medical documentation supporting that request.

**112.** Plaintiff further alleges that the filing occurred despite ongoing communications concerning housing-related concerns and accommodation-related matters.

**113.** Beginning in or about November 2025, Rosemary Spohn communicated directly with Plaintiff concerning housing-related disputes, accommodation-related issues, and the possibility of resolving ongoing conflicts between the parties.

**114.** Plaintiff alleges that certain communications proposed resolution of pending disputes through negotiated terms and conditions discussed between the parties.

**115.** Plaintiff further alleges that the tone and substance of those communications evolved over time and became increasingly focused on enforcement-related matters and Plaintiff's continued occupancy of the premises.

**116.** During November and December 2025, legal correspondence, notices, and housing-related communications were repeatedly delivered to Plaintiff's residence.

**117.** Plaintiff alleges that certain notices and communications were delivered directly to the residential unit by property personnel rather than exclusively through traditional mailing channels.

**118.** Plaintiff further alleges that some communications were delivered repeatedly or in duplicative form.

**119.** Plaintiff alleges that communications from Rosemary Spohn continued through approximately December 22, 2025 and became progressively more adversarial in tone.

**120.** Plaintiff further alleges that such communications placed increasing pressure upon Plaintiff concerning his housing situation and ongoing disputes with management.

**121.** Plaintiff alleges that the actions described above occurred after Defendants had approved the requested first-floor accommodation and after Defendants had acquired extensive knowledge of Plaintiff's disability-related circumstances and housing concerns.

## COUNT I
## Fair Housing Act – Failure to Make Reasonable Accommodation
## 42 U.S.C. § 3604(f)(3)(B)

122. Plaintiff repeats and realleges Paragraphs 1 through 121 as though fully set forth herein.

123. Defendants possessed actual knowledge of disability-related circumstances affecting Plaintiff's household.

124. Defendants received accommodation requests, supporting medical documentation, and communications concerning disability-related housing needs.

125. Defendants approved the assistance-animal accommodation described in Paragraphs 31 through 38.

126. Defendants later approved Plaintiff's request for a first-floor transfer accommodation as described in Paragraphs 95 through 103.

127. Plaintiff alleges that first-floor units were available within the residential community.

128. Plaintiff further alleges that Defendants failed to timely implement the approved accommodation and imposed additional conditions upon its execution.

129. Defendants thereby failed to reasonably accommodate disability-related housing needs known to them.

130. Such conduct violated 42 U.S.C. § 3604(f)(3)(B).

131. As a direct and proximate result, Plaintiff suffered damages including emotional distress, inconvenience, and loss of the full use and enjoyment of housing.

## COUNT II
## Fair Housing Act – Disability Discrimination
## 42 U.S.C. § 3604(f)(2)

132. Plaintiff repeats and realleges Paragraphs 1 through 131.

133. Defendants possessed actual knowledge of disability-related circumstances affecting Plaintiff's household.

134. After acquiring such knowledge, Defendants subjected Plaintiff to increased scrutiny, administrative burdens, inspections, communications, and actions described throughout this Complaint.

135. Plaintiff further alleges that Defendants imposed unequal conditions and restrictions affecting the terms, conditions, privileges, and benefits of his tenancy.

136. Defendants thereby discriminated against Plaintiff in connection with the terms, conditions, and privileges of housing.

137. Such conduct violated 42 U.S.C. § 3604(f)(2).

138. Plaintiff suffered compensable damages as a result.

## COUNT III
## Fair Housing Act – Interference, Coercion, Intimidation, and Retaliation
## 42 U.S.C. § 3617

139. Plaintiff repeats and realleges Paragraphs 1 through 138.

140. Plaintiff engaged in activities protected under the Fair Housing Act.

141. Such activities included accommodation requests, submission of medical documentation, communications concerning disability-related circumstances, and complaints regarding housing-related concerns.

142. Defendants were aware of Plaintiff's protected activities.

143. Following Plaintiff's exercise of protected rights, Defendants engaged in conduct including increased scrutiny, adverse communications, administrative pressure, and actions described in Paragraphs 57 through 121.

144. Plaintiff further alleges that Defendants' conduct would reasonably tend to interfere with, intimidate, coerce, discourage, or burden a person exercising rights protected under the Fair Housing Act.

145. Defendants thereby violated 42 U.S.C. § 3617.

146. Plaintiff suffered emotional distress, inconvenience, anxiety, and other damages as a result.

## COUNT IV
## New Jersey Law Against Discrimination (NJLAD)
## Failure to Accommodate and Disability Discrimination
## N.J.S.A. 10:5-12(g)

147. Plaintiff repeats and realleges Paragraphs 1 through 146.

148. Defendants possessed actual knowledge of disability-related circumstances affecting Plaintiff's household.

149. Plaintiff submitted accommodation requests supported by documentation known to Defendants.

150. Defendants approved accommodation requests but failed to fully and reasonably implement those accommodations.

151. Defendants further subjected Plaintiff to unequal treatment regarding the use and enjoyment of housing.

152. Such conduct violated the New Jersey Law Against Discrimination.

153. Plaintiff suffered damages as a result.

# COUNT V
# New Jersey Law Against Discrimination (NJLAD)
# Retaliation
# N.J.S.A. 10:5-12(d)

154. Plaintiff repeats and realleges Paragraphs 1 through 153.

155. Plaintiff exercised rights protected by NJLAD through accommodation requests, disability-related communications, complaints, and requests for assistance.

156. Defendants were aware of Plaintiff's protected activities.

157. Thereafter, Defendants engaged in conduct including increased administrative scrutiny, adverse communications, restrictions, pressure, and other actions described throughout this Complaint.

158. Plaintiff alleges that such conduct occurred after and because Plaintiff exercised protected rights.

159. Defendants thereby retaliated against Plaintiff in violation of N.J.S.A. 10:5-12(d).

160. Plaintiff suffered compensable damages as a result.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants, and grant the following relief:

A. Declare that Defendants' conduct, as alleged in this Complaint, violates the Fair Housing Act, 42 U.S.C. § 3601 et seq., including 42 U.S.C. §§ 3604(f)(2), 3604(f)(3)(B), and 3617;

B. Declare that Defendants' conduct, as alleged in this Complaint, violates the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 et seq., including N.J.S.A. 10:5-12(d) and 10:5-12(g);

C. Enter a permanent injunction enjoining Defendants, their officers, agents, servants, employees, attorneys, and all persons acting in active concert or participation with them, from engaging in further discrimination, interference, coercion, intimidation, retaliation, or other unlawful conduct against Plaintiff or any member of Plaintiff's household on the basis of disability or protected activity;

D. Order Defendants to take all affirmative steps necessary to restore Plaintiff and his household, as nearly as practicable, to the position they would have occupied absent Defendants' unlawful conduct, including such injunctive, declaratory, administrative, and operational relief as the Court deems just and proper;

E. Award Plaintiff compensatory damages in an amount to be determined at trial for emotional distress, humiliation, inconvenience, loss of use and enjoyment of housing, out-of-pocket expenses, and other actual damages caused by Defendants' unlawful conduct;

F. Award punitive damages to the extent permitted by law;

G. Award reasonable attorneys' fees and costs pursuant to applicable law, including the Fair Housing Act and the New Jersey Law Against Discrimination, to the extent Plaintiff is entitled to recover such fees and costs;

H. Award pre-judgment and post-judgment interest as allowed by law; and

I. Grant such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Williams Evans Nims

6/3/2026